COUNTY OF CHEATHAM et al. v. R. H. BAKER, Commissioner.

Middle Section.. December 10, 1932.

Petition for Certiorari denied by Supreme Court, March 18, 1933.

(1)

P. H. Duke and S. A. Marable, both of Ashland City, and W. P. Cooper, of Nashville, solicitors for complainants, appellants.

L. D. Smith, Attorney-General of Tennessee, and John L. Neely, Assistant Attorney-General, solicitors for defendant, appellee.

Roy H. Beeler, Solicitor-General, and O. L. Peeler, of Camden, of counsel, for defendant.

DeWITT, J. Upon the final hearing of this cause the original and amended and supplemental bills were dismissed by the Chancellor and the injunction restraining the Commissioner of Highways and Public Works "from constructing State Highway Number 112, and

from using funds of the State Highway Department in the construction thereof," was dissolved. The complainants the County of Cheatham and two of its citizens and taxpayers have appealed from this decree, and in their assignments of error they present three propositions:

1. That, "the road project proposed by the Commissioner and enjoined in this case, first known in this record as a removal and relocation of State Highway No. 12, and later described and called by the State No. 112, is not, does not follow, and is not a reconstruction or rebuilding of any 'Main traveled road,' the designation and construction of which is provided by law and especially Acts 1919, Chapter 149, Section 7. Its designation and construction is in violation of law, especially of said Act, is beyond the powers of his office and not done in the exercise of his reasonable discretion.

2. That, "in addition to acting in excess of his powers under the law, as set out in Proposition 1, the Commissioner, in attempting the designation and construction of said enjoined project, has not acted in the exercise of his reasonable discretion.

3. That, "The commissioner is in contempt of Court in that he has violated and disobeyed the commands of the injunction served on him, and is not entitled to relief of any sort, especially to a dissolution of the injunction and an order to the Master to report damages for the issuance of the injunction or to a determination of such damages, if any."

The purposes of the original and amended and supplemental bills are carefully stated in the opinion of the Supreme Court, prepared by Mr. Justice Swiggart, reported in 161 Tennessee, 222 et seq., 30 S. W. (2d), 234, et seq. In that appeal from the action of the Chancellor in dismissing the amended and supplemental bill of the complainants on the demurrer of the defendant, the Commissioner of Highways and Public Works, the law of the case was fully settled. It was determined that a decision of the Commissioner of Highways to erect or construct a particular highway, reached in the reasonable exercise of his discretion, is not subject to judicial review; but that the Commissioner should be required to answer the amended and supplemental bill to the end that it might be determined upon evidence whether he had acted in the reasonable exercise of the discretion vested in him. The Court was of the opinion that the averments of fact set forth in said bill and carefully summarized in its opinion, showed at least that the County of Cheatham was about to be deprived of substantial rights conferred upon it by statute, without a fair or adequate consideration by the Commissioner of Highways of the facts involved. The demurrer was therefore overruled and

the cause was remanded to the Chancery Court for further proceedings. These proceedings have been elaborately conducted. A vast amount of evidence has been adduced by the contending parties. The cause was given thorough consideration by the Chancellor, and he stated in his opinion that he had read every line of the evidence. His finding is that the Commissioner has acted in the reasonable exercise of the discretion vested in him. He decreed that the equities alleged in the original bill and in the amended and supplemental bill are fully met and denied by the answer, and are not sustained by the evidence.

The Commissioner of Highways and Public Works (hereinafter termed the Commissioner) possesses the powers conferred upon the State Department of Highways by chapter 149 of the Public Acts of 1919, among them being the following:

"Sec. 7. Be it further enacted, That the State Highway Commission is given the power to proceed to designate main traveled roads with a view of connecting all county seats, and also to designate other main traveled roads, which are deemed of sufficient importance to be included in the general highway plan of the State and receive for their construction and improvement financial aid under the provisions of this Act.

"Sec. 8. Be it further enacted, That all counties of the State desiring to participate in the expenditure of the funds of the State Highway Department, which shall comply with the requirements of the law and the rules and regulations of the State Highway Commission, shall have the right to participate in said fund and be aided in the construction or reconstruction of roads and bridges therein and the maintenance thereof, if in the discretion of the State Highway Commission the same is deemed advisable.

"Sec. 9. Be it further enacted, That whenever the said State Highway Commission finds it necessary or advisable it shall have the power to alter the course or grade or otherwise improve any road selected, adopted, or accepted for Federal or State aid and take over and improve as a State Highway."

To the original bill an answer was filed by the then Commissioner, Harry S. Berry. A supplemental answer to the original bill was filed by his successor, Commissioner R. H. Baker. After the cause was remanded to the Chancery Court, an elaborate answer to the amended and supplemental bill was filed by Commissioner Baker. In all these pleadings the controversy was resolved into one primary issue upon the evidence—whether or not the Commissioner has acted in the reasonable exercise of discretion vested in him as to the location of highway No. 112 and the improvement and continued mainte-

nance of highway No. 12 as proposed by him, and in doing so had proper regard to the legislative purpose to connect all county seats with improved roads as a part of a general highway plan of the State.

The proposed route No. 112 extends northwestwardly from the Hyde's Ferry Bridge, near the City of Nashville, to the Cheatham County line, thence in a general northwestwardly direction through the extreme northern part of Cheatham County and then very directly to the city limit of Clarksville. The total distance is 41.5 miles. At Pleasant View, nine miles north of Ashland City, it would intersect Highway No. 49 which extends from the bridge over Cumberland River at Ashland City northward through Springfield to the Kentucky line. The distance between Ashland City and Nashville via Pleasant View by this proposed road would be about thirty-two miles. The distance by the existing Highway No. 12, the old Hyde's Ferry Pike, from the Hyde's Ferry Bridge to Ashland City is about seventeen miles, and the distance by No. 12 from Ashland City to Clarksville is 27.49 miles. The total distance from the Hyde's Ferry Bridge to the city limit of Clarksville by No. 12 is 44.52 miles.

In his answer to the amended and supplemental bill, Commissioner Baker, among other things, averred:

"In view of all the facts which have developed before and since the opinion of the Supreme Court in this cause, respondent's opinion and judgment is that the interest of the public would be best subserved and that the public needs and public welfare require not only the construction of Highway No. 112, from Nashville to Clarksville on the location herein referred to, but also require the improvement and continued maintenance by the State as a State Highway of the present route from Nashville via Ashland City to Clarksville, Highway No. 12.

"He denies the allegation that he plans to relocate Highway No. 12 and he denies the allegation that the location for No. 112 was made by him "without any competent and honest effort to ascertain if such a location could be found suitable for the relocation of said road on its present route, and meeting the demands of its control points.'

"He shows that in arriving at his decision, and in using his discretion both as to location of Highway No. 112 and for the improvement and continued maintenance of highway No. 12, he had regard to the declared legislative purpose that the general Highway plan of the State was with a view of connecting all County Seats. He also had regard to the funds available, and it is his purpose to use same to the best public interest as he sees it.

"He denies that the construction of the new Highway from

Nashville to Clarksville on the route No. 112 will be a practical abandonment of Route No. 12 connecting the County Seat of Cheatham County with the County Seats of Montgomery and Davidson Counties; under present and past financial conditions, it is not now practical, in respondent's opinion, to construct a high type, hard surface highway from Nashville via Ashland City to Clarksville, and he is advised that it is his duty to use the means and methods at his control toward building up and constructing the highways and determining upon the character of the highways in the State, the character of the highway to be constructed necessarily depending upon the character of country through which the Highway runs and the funds available and public needs. His present plans with regard to Highway No. 12 at its present location are to continue to maintain the same, as heretofore, and to oil the section from Ashland City, to connect with the present oiled road in Davidson County; also, to construct a bridge across Dry Fork Creek and Marrowbone Creek, the surveys for which have already been made, which improvements, in respondent's opinion and judgment, would furnish the best highway available under present conditions, and one which would furnish service which would entirely satisfy traffic needs and demands.

"Respondent shows that in the exercise of his discretion with regard to these two routes, he has considered and weighed fairly all the available information and data as to the feasibility of the routes, cost, availability of funds, and the public needs and requirements. He denies that the construction of 112 would effectively destroy, or in any way impede Cheatham County's right to have its County Seat connected with adjoining counties, and denies that he has in any way been guilty of any abuse of discretion, but shows that he has considered all facts, circumstances and investigations in arriving at his decision."

In the original bill it is alleged, and it is not denied, that for more than fifty years the Hyde's Ferry Pike has served as a County Seat road between Nashville and Ashland City, that it is a County Seat road between Ashland City and Clarksville, that it was the main traveled highway between said county seats; that in 1923 this highway was taken into the State Highway System, since which time, on every annual map of the highway department it has been shown as State Highway No. 12; that it is marked from the City of Nashville to the City of Clarksville with the official markers of the State Highway Department; that this State Highway No. 12 serves a large population, has numerous feeder and tributary roads to the south which are connected to it by ferries over the Cumberland River. The bridge over Cumberland River at Ashland City has been com-

pleted and it carried Highway No. 49 running from north to south, into the country south of the Cumberland River. From Nashville to the Cheatham County line Highway No. 12 has long been a hard surface road, but it has many curves and sharp turns, six crossings of the Tennessee Central Railroad, and it goes in places which are 12 feet below the high water mark of Cumberland River when it overflows, and goes over some very high hills in Davidson County. From the Davidson-Cheatham line to Clarksville it is a graveled road with many curves and sharp turns, passing through two or more streams without bridges, and over some wooden bridges over other streams. It has four railroad crossings between Ashland City and Clarksville.

In 1928 Commissioner Berry determined to construct the proposed Highway 112 running as aforesaid through the northern part of Cheatham County, missing Ashland City, its County Seat, by about nine miles. In the bill it is alleged that this was an attempt at a relocation of State Highway 12; that in reality Highway 112 would be a new highway running through virgin territory, not following the route of any existing road. In the answers it is denied that this would be an abandonment of State Highway 12. The complainants seek to enjoin permanently the construction of Highway 112 on the ground that it would amount to such abandonment of Highway 12 which runs between the county seats. They do not desire that the Commissioner reconstruct Highway No. 12 along its present line, for they admit that it would be virtually impossible thus to convert it into a highway such as is contemplated by the highway laws as they have been administered during the past decade. They insist that under the Act of 1919, heretofore quoted, Cheatham County is entitled to a first class highway from its County Seat to Nashville on the east and from its County Seat to Clarksville on the west. The present Highway 12 is admittedly narrow and crooked, with ten crossings of the railroad, and is altogether unsuited to modern automobile travel; in fact during the periods of very high water it is impassable in places, not only in Davidson, but also in Cheatham County. The complainants insist that the construction of Highway 112 and the improvement and maintenance of Highway 12 along its present route will only relegate Highway No. 12 to the class of improved county road of secondary importance; and they insist further that the promise of the Commissioner so to improve and maintain this road to the extent which he specifies in his testimony, amounts only to a sham and a subterfuge, and that Cheatham County would be thus deprived of its rights under the law.

The complainants show that the Cheatham County Quarterly Court caused a survey to be made of another route for a highway running from Nashville to Clarksville through Ashland City by Mr. E. L.

Pardue, an engineer. A highway along this route is what the complainants insist that the Commissioner should construct instead of the proposed highway 112. A vast amount of testimony, highly conflicting, was taken as to the probable cost of construction of such a highway. Mr. Pardue made an estimate of cost based upon a 31 foot roadway width in fills, and a 39 foot roadway width in ditches, including cuts, whereas the engineers who testified at the instance of the Commissioner made an estimate of cost based on a road 41 feet wide instead of 31 feet wide. Mr. Pardue's estimate of cost under his survey was $965,494.75, but the defendant insists that this did not include some very material items of cost. The estimate of cost of constructing the highway along the Pardue survey, as made by Mr. Watkins, the defendant's engineer, is $1,676,963.85. Mr. Watkins made a reconnoissance survey from Nashville to Clarksville. After this survey was made the Commissioner had Mr. Watkins to go over the Pardue survey for the purpose of checking the same and ascertaining the cost of construction along this line. It was found that Mr. Pardue had only run a preliminary line and made a profile from Nashville to Ashland City, and that he had made a stadia survey from Ashland City to Clarksville. The engineers of the Highway Department retraced the line from Nashville to Ashland City, putting in stakes every 100 feet, and running levels over that part between Ashland City and Clarksville, and made an investigation for the purpose of ascertaining the cost of construction upon the Pardue survey. In making said investigation, the kinds of material encountered were classified, and profile was made and a grade allowed thereon so as to show the depth of cuts and fills and the number of cubic yards of material which would have to be moved in order to construct said road, and the size and character of the drainage structures was determined. All of this is abundantly shown by the evidence. Upon the basis of all this investigation, the cost was estimated at $1,676,-963.85. The estimated cost of construction of Highway No. 112, which is sought to be enjoined in this cause, is $502,435.91. Highway No. 112 is projected as a standard, modern highway 41 feet wide, and the evidence shows that its grades would be less and its curves fewer than those of any highway running through Ashland City.

It appears from the record that the following was done by the Department of Highways and Public Works in an attempt to select a feasible route, and that the same was considered by the Commissioner in selecting the route followed by Highway 112:

In 1924 J. G. Creveling, the then Commissioner, ordered a thorough study of the territory between Nashville and Clarksville and an investigation of every possible route. Major J. A. Reagan, an engineer of long experience, made an investigation independent from any in-

formation from interested parties and recommended the route along which the Commissioner proposes to construct Highway 112. In March, 1925, Mr. Creveling caused to be made a topographical map covering routes selected and recommended by Major Reagan and this was used in making the final location for Highway 112. This route was determined upon by Commissioner Berry. Commissioner Baker, upon succeeding him made an investigation and determined upon the route of the proposed Highway 112. Reconnoissance survey of Mr. Watkins and his assistants was made, seeking a feasible route to Clarksville via Ashland City. This surveying party made a full investigation of the adjacent territory, running a traverse of the present route 12, noting all railroad crossings and places where backwater of the Cumberland River covered said road, to determine the amount of material to be moved and the costs of moving the same, and determining the size of drainage structures and the cost of constructing them. Upon this reconnoissance survey the engineer made an estimate that the cost of constructing a modern highway from Nashville to Clarksville via Ashland City, would be $1,696,850. This is substantially the amount finally reached by estimate made upon the basis of the Pardue survey. The complainants attacked the failure of the Commissioner to have a location survey made, and this is met by the Commissioner's contention that a location survey would have been useless and an unwarrantable waste of money because he determined upon full and fair investigation that it would be impracticable to construct a modern highway from Nashville to Clarksville via Ashland City because of the topography; and that it would be an utterly unjustifiable, if not impossible expenditure of the public monies to build a road along that route which would cost a million dollars or more beyond the cost of construction of the proposed Highway 112. It appears from the aforesaid figures that even if Mr. Pardue's estimate of cost is approximately correct, and a road 31 feet wide would be in all respects satisfactory, the cost of it via Ashland City would be about a half a million dollars more than the cost of Highway 112. The burden of proof was upon the complainants to show that the Commissioner has departed from the law by an unreasonable exercise of the discretion vested in him. Upon this proposition they must stand or fall. It is important here to quote from the opinion of Mr. Justice Swiggart (161 Tenn., pp. 233-234) as follows:

"Under the terms of the highway statute of 1919, chapter 149, Cheatham County is entitled as a matter of right to have its county seat connected with the county seats of adjoining counties with highways conforming to the general highway plan of the State, whenever 'in the discretion of the State Highway

Commission (Commissioner) the same is deemed advisable.' In the exercise of such discretion, the County is entitled to have the Commissioner consider and weigh fairly all the available information and data as to feasibility of route, cost, and availability of funds, etc. And if by a gross or palpable abuse of discretion, or a failure to exercise it, the county is deprived of this right, it may rightfully resort to the courts for redress. Insurance Co. v. Craig, 106 Tenn., 621, 642; Department of Highways v. Stepp, 150 Tenn., 682, 688; Parks v. Margrave, 157 Tenn., 316, 324. A decision by the Commissioner to construct a parallel road, which would effectively destroy the county's right to have its county seat connected with adjoining counties, reached without a fair and reasonable investigation of feasible routes which would meet the declared purpose of the highway statute, as hereinabove construed, would be a gross or palpable abuse of discretion, and in fact a failure to exercise discretion, amounting to an arbitrary and capricious exercise of power.''

The complainants insist that the Commissioner has decided to construct Highway No. 112 without ''a fair and reasonable investigation of feasible routes, which would meet the declared purpose of the highway statute,'' as construed by the Supreme Court in this cause.

The implication of the ruling of the Supreme Court is that whenever the Commissioner, after fair and adequate investigation and consideration of feasible routes, determines that it is inadvisable to construct a highway between two county seats, and his conclusion is reasonable upon the facts, he does not violate the law by exceeding his powers. Such exercise of power is not subject to judicial review. While the definite purpose is expressed in the statute to connect ''all county seats'' with improved roads as a part of a general highway plan for the State, it is recognized that there may be conditions of topography, etc., necessitating undue and unreasonable expenditure of the public monies, which would render it inadvisable for the Commissioner to undertake to connect county seats with a road improved according to the most elaborate modern standard. Such conclusion under such circumstances would not be a gross or palpable abuse of discretion or failure to exercise discretion, amounting to an arbitrary and capricious exercise of power.

The complainants also insist that because the proposed Highway No. 112 does not follow any main-traveled road it is beyond the power of the Commissioner to construct it. The Act of 1919 empowers the Commission (Commissioner) ''to proceed to designate main-traveled roads with a view of connecting all county seats, and also to designate other main-traveled roads which are deemed of sufficient importance to be included in the general highway plan of the State;'' also, when-

ever he finds it necessary or advisable, "to alter the course or grade or otherwise improve any road selected, adopted, or accepted for Federal or State aid and take over and improve (it) as a State highway." The complainants contend that the Commissioner is without power to designate for construction a highway on a new route that does not follow any existing road. This contention is not sustainable in view of the discretion vested in the Commissioner, provided that it be not exercised arbitrarily and after fair and adequate investigation. A fair construction of the statute would be that ordinarily, and as far as the public interest would permit, a main-traveled road should be followed, but whenever by reason of undue expense or physical obstacles this is not feasible, the Commissioner may choose another route or not build at all.

The charge that the Commissioner has not made a fair and reasonable investigation of feasible routes, and therefore has acted arbitrarily and abused his discretion, has required a minute consideration of the evidence. The complainants charge that Highway No. 112 would be but a re-location of Highway No. 12, in effect an abandonment of the latter highway. They declare that this present highway is very inadequate, unsuitable, and they would not be satisfied with anything less than a new highway, running in its general direction through Ashland City, but not on its roadbed. The Commissioner says that this is impracticable because of physical difficulties and prohibitive expense. It is not for the Court to determine this as an independent question, but merely to say whether or not the Commissioner made the proper investigation and had reasonable cause to reach his conclusion.

First, we consider how the Commissioner plans to improve and maintain the existing road from Nashville to Clarksville via Ashland City. In his answer he says:

"And he denies as strenuously as it is possible for him to deny all insinuations contained in the Amended and Supplemental Bill to the effect that the State Highway Department does not intend to improve and continue to maintain State Highway No. 12; he proposes to do this, as long as he is Commissioner, and he feels sure any succeeding Commissioner would take into consideration the needs of Nashville, Ashland City and Clarksville, and will agree with him that the public needs and welfare require the continued maintenances of said Road No. 12."

In his testimony, on direct examination Commissioner Baker was asked and he answered:

"Q. Now, is it your present plan as Commissioner of Highways, Mr. Baker, in the event you are permitted to construct the road from Nashville to Clarksville on the location 112, to

abandon or discontinue the present road known as 12, between Nashville and Clarksville by way of Ashland City? A. No, sir, it is our present plan to maintain and improve the Nashville-Ashland City-Clarksville road.

"Q. What is your purpose in regard to the character and class of improvement that is to be made on that road? What kind of maintenance do you mean to make on that road? A. It is a light road in Davidson County, it is gravel from the Davidson County line to its intersection with Route 76 to Montgomery County. It is our plan to continue the maintenance to a State standard and work in improvements as it is practicable to do so with a view of oiling the section between Ashland City and the Davidson County line, so as to provide an oiled road from Ashland City to Nashville; also to build the bridges across Dry Fork and Marrowbone Creek.

"Q. State whether or not you proposed to keep the road on the present State system as part of it? A. We do, yes, sir.

"Q. Did you ever propose to the county judge of Cheatham County or anyone else representing the county that you would construct these bridges across Marrowbone and Dry Fork? A. We instructed a division engineer, Briggs Smith, to make arrangements necessary for the rights of way for the construction of these bridges. He advised me some months ago, showed me copy of a letter, I believe, from the County Judge, refusing to obtain rights of way and insisting that nothing be done towards the construction of these bridges until after the present suit is decided."

The Commissioner was cross-examined extensively upon this subject. He had personally gone over the route of No. 12. On September 24, 1929, he had submitted to the Chairman of the County Court of Cheatham County a plan for settlement of this controversy, proposing to construct Highway 49, Highway 112 and improve and maintain Highway 12. The proposition was not accepted. On cross-examination he stated that his predecessor's idea was to abandon Route 12, but that he, the witness, felt that the people of Ashland City were entitled to have route 12 continued as a state road, and he added 112 to the system, keeping route 12 on the system; that his designation of the proposed new route as 112 was by way of coincidence, as the highways were numbered in order and the last highway proposed before this one was numbered 111. We accept this statement and dismiss the contention that the designation of the proposed highway as No. 112 indicated an abandonment of No. 12. This cannot be concluded in view of what the Commissioner proposes to do, and which we must accept as in good faith. He does not propose to straighten

or widen No. 12, nor remove any of the railroad crossings (some of which are under the railroad), nor change the grade so as to avoid overflows from back water; but he does propose replacing with a modern bridge the old wooden bridge over Marrowbone Creek, and to build a bridge over Dry Creek (where there is now only a ford), both of which are between Ashland City and Nashville. He was asked whether or not he would bridge a ford over a small creek just west of Ashland City where the Creek runs into the river bottom and during high water becomes impassable. He said that details concerning this had not been worked out; but he further said that he would place a bridge there if it was necessary to make it a serviceable road; that his plans would naturally embrace that if the ford justified the building of a bridge. There is some evidence tending to show that it would be difficult, if not impossible, to build a bridge at that place because the railroad runs into the high bank on the west side, but it is not conclusive, and it would be for an engineer to determine whether or not such a bridge could be built at that place. The Pardue survey calls for a different route so as to avoid this place. Certainly the proposed improvement and maintenance of Highway No. 12 by the Commissioner would make it a much better road than it is at the present, and especially give to travelers from Ashland City to Nashville a far better service, although this road in places would still be under high water when it should come, and the hills and sharp turns would not be eliminated. Along with this it should be considered that if at any time this road should be covered with high water, there would be easy access from Ashland City, both to Nashville and to Clarksville, by Highway 49 and Highway 112, although the distance either way would be greater by ten or more miles, but it would be a dry road of easy grades at all seasons.

In the opinion in this cause, prepared by Mr. Justice Swiggart, dealing with the averments of the bill as to the plans of the Commissioner, it is said:

"The Commissioner stated his theory of sympathy with the desire to have the highway constructed through Ashland City, and rested his decision against it upon the practical difficulties and expense of such a highway. In view of his announced conclusion that the expense is prohibitive, his assurance that route No. 12 will not be abandoned but will be maintained at State expense as a part of the State highway, can only mean that the present road will be retained in substantially its present condition, and not that it will be converted into a highway such as is contemplated by the highway laws as they have been administered during the past decade. And if the difference in the cost of the two highways, as estimated by the Commissioner, is

such as to require the construction of No. 112 in preference to No. 12, it is obviously a necessary inference that the cost of constructing both will be prohibitive. The averments of the amended and supplemental bill therefore support the conclusion of the complainants that the construction of Highway No. 112 will mark the abandonment by the Highways Department of Route No. 12 as an intercounty seat highway route, and will relegate it to the class of an improved county road of secondary importance. It is shown on the face of the bill that the present road is narrow and crooked, with ten crossings of a railroad, and is altogether unsuited to modern automobile travel.''

The evidence does not warrant the conclusion that the construction of Highway No. 112 will mark the abandonment of route No. 12 as an intercounty seat highway route, to the extent that it would destroy two county seat roads already existing and established as a part of the State's system of roads. The two county seat roads already existing and thus referred to, are the roads from Ashland City to Nashville and from Ashland City to Clarksville, constituting Highway No. 12. The announced purpose of the Commissioner is not only not to destroy these roads, but to improve them very materially and maintain them. It will not mean that Highway No. 12 will be relegated to ''the class of an improved county road of secondary importance.'' In other words, it will still be a State highway as improved, and will be maintained by the State. Taking all the evidence together, we find that the construction of Highway 112 will not work the abandonment of Highway No. 12 as an intercounty seat highway.

The complainants are seeking as their ultimate object the construction of a new highway from Nashville to Clarksville via Ashland City, in the face of an enormous certain cost. Of course, the construction of Highway 112 would prevent this, and this is why the complainants seek a permanent injunction against it. The rights of Cheatham County are declared in the following sentence from the opinion of the Supreme Court:

''Under the terms of the highway statute of 1919, Chapter 149, Cheatham County is entitled as a matter of right to have its county seat connected with the county seats of adjoining counties, with highways conforming to the general highway plan of the State, whenever 'in the discretion of the State Highway Commission (Commissioner) the same is deemed advisable.' ''

It must not be overlooked that Highway No. 112 and Highway No. 49 would give to Ashland City a connection with the county seats of all of its adjoining counties. We do not understand that connection between county seats must be made by the shortest possible route, but we are inclined to the opinion that a reasonable deviation

from that route in the interest of better travel and economy, would not be a violation of the rule announced by the Supreme Court, based on the statute. However, the Supreme Court was dealing with this precise situation, although the facts which it was considering were merely those set forth in the amended and supplemental bill. The vast amount of evidence in this record has presented the situation and circumstances and the problems with far more thoroughness than is shown in the pleadings filed by the complainants. The motives and purposes of the Commissioner of Highways have been caustically attacked by the complainants, but they have not succeeded in sustaining such attack by the preponderance of the evidence. We find that the Commissioner has had a very difficult and unusual problem before him, and we find no ground upon which to base a conclusion that he has not acted in good faith and endeavored to act within the powers conferred upon him by law.

We now deal with the issue of fact whether or not a fair and reasonable investigation was made by the Commissioner before he arrived at his conclusions. The complainants say that there is no proof that the State has ever made an attempt to find a suitable location for this highway along the existing route of Highway No. 12. If he has not done this, of course he has not observed the purpose of the statute as interpreted by the Supreme Court; but the evidence refutes this proposition advanced by the complainants.

The determinative matter before the Court is what had been done up to the time when the record in this cause was completed; for the Court is only concerned with the truth of the situation and its problem. The complainants say in their brief:

"After a great deal of unavailing effort on the part of the Cheatham County authorities to get the Commissioner of Highways to make some sort of investigation of the route of Highway No. 12, Commissioner Baker finally, some time in July and August, 1929, sent Mr. C. R. Watkins upon this route. Watkins merely made a measurement, or traverse, of the old road, with two deviations, one known as the Bull Run deviation, the other Sycamore Creek, Chapmansboro deviation."

If the investigations and estimates made by Mr. Watkins, the senior resident engineer of the Highway Department, were fair and adequate for determination of the practicability and probable cost of such road, and if the Commissioner and competent assistant engineers from personal observation and from reliable reports reasonably concluded that it was not advisable to construct such road, then the complainants have failed to carry the burden which rested upon them.

As aforesaid, in 1924 Commissioner J. G. Creveling ordered a

thorough study of the territory between Nashville and Clarksville with a view of locating a highway. Major J. A. Reagan, a location engineer of more than fifty years of experience, spent four days traveling through that country in an automobile seeking a suitable location for a road to connect Nashville with Clarksville. He was instructed by the Commissioner to explore the territory from Nashville below Ashland City to Clarksville or by Springfield to Clarksville, and to look out for a connection from Springfield and also one from Ashland City. Afterward he made a second trip to see if he could improve on the suggestion which he made in his report, which was in the general direction of the proposed Highway No. 112. He testified that he toured the whole country thoroughly. His conclusion was that the route of Highway 112 would not cost half what a new road by Ashland City would cost; that it would be a better alignment, of easier grades, of less rise and fall. He testified in this cause that he believed that a new road by Ashland City would cost three times the cost of Highway No. 112. He had been over the Ashland road the day before he testified. A topographical map covering the route selected and recommended by Major Reagan was made and was used in making the location of Highway 112. After Mr. Baker became Commissioner of Highways he considered the prior investigations made by the Department. From the testimony of Mr. S. D. Stringfellow, an engineer in the State Highway Department, it appears that this subject was carefully studied by Commissioners, Creveling, Bass and Berry from maps and reports of engineers before Mr. Baker became Commissioner. Mr. Stringfellow said, "I would say there has been more systematic study made on this road than was made on any other project in Tennessee since I have been connected with it. It was made in a systematic way by having reconnoitering study by one man and then a thorough map being made by another set of engineers, and then a third man, Mr. Bible, with this map, studied the territory of both roads, and then it was fully followed up with the final location in detail. There are very few projects that are carried through all these studies."

The insistence that the map and the investigation by Major Reagan were made solely for location of the road from Nashville to Clarksville with utter and complete disregard of Cheatham County, is extreme and not sustained by the evidence.

In July, 1929, Commissioner Baker directed C. R. Watkins, his senior resident engineer, to make an investigation of a possible route from Nashville to Clarksville via Ashland City and give him an idea of what it would cost. He did make the investigation. As he estimated, the cost would be $1,696,850. The Quarterly County Court of Cheatham County employed Mr. E. L. Pardue to survey such a

route and estimate the cost. He made a survey of a line from the Hyde's Ferry Bridge to Ashland City, running parallel with the Tennessee Central Railway on its eastern side, and then from Ashland City to Clarksville, eliminating all railroad crossings and overflows of water. His line would run 40.68 miles from the Hyde's Ferry Bridge to the city limits of Clarksville. The route of the proposed Highway No. 112 is 1.92 miles shorter between the two points than the Pardue line, but this is not very material.

When Mr. Pardue made his report Commissioner Baker sent Mr. Watkins with several assistants to go over the Pardue survey, make a careful investigation of it and an estimate of the cost of construction. Mr. Watkins was instructed to go into Cheatham County unprejudiced and was told that if there was any possible way to build a line by Ashland City that was what the Commissioner wanted to do. The investigation made by Mr. Watkins after the Pardue survey was made is under sharp attack as inadequate and not in good faith. Mr. Watkins testified very clearly and extensively as to the details of his investigation and the basis of his estimate. He said that he spent four months in doing this work; that he made a fair and reasonable investigation of all the routes. He reached the conclusion that the Pardue plan was not practical because of the cost of it, in order to eliminate railroad crossings and get it above high water; because of the enormous drainage structures that would have to be constructed. It is practically nearly all rock from Nashville to Ashland City, and much rock from Ashland City to Sycamore Creek, though not so much rock after leaving Sycamore Creek. He said that the cost of construction along the Pardue route would be the greatest per mile in the State of Tennessee. At a place about twelve miles west of Nashville there is a very high hill over which Road No. 12 now runs, known as the Big Hill. On its side toward the nearby river there is a perpendicular rock bluff about 100 feet high, at the base of which runs the Tennessee Central Railway. The Pardue survey calls for blasting into this bluff and making a roadway above the railway. In doing this it is not possible to dump the waste material, or rock, down the slope or it would cover the railroad, and it would be unlawful to dump it into the river, consequently, it would have to be hauled to the ends of the cut at great expense. Mr. Watkins estimated that the cost of the construction of a mile at this place would be $235,000. Mr. McEwen, the chief engineer of the Highway Department, testified that it was impractical to build a road along this bluff. Major Reagan thought that it would be better, if this route were selected, to construct a tunnel through the Big Hill, but Mr. Watkins said that a suitable tunnel would cost $245,000.

As aforesaid, before the Pardue survey was made, Mr. Watkins made an estimate of cost of construction of a new highway along that general route at $1,696,850; and his estimate after his four months investigation of cost of the Pardue route, was $1,676,963.85—showing a slight difference, due to more thorough investigation.

·The complainants insist that because the Commissioner did not cause a location survey to be made he has not made a fair and adequate investigation. A location survey would have cost a large sum of money, and it could not be concluded that the Commissioner did not exercise reasonable diligence in failing to order a location survey, when he had before him the Pardue report and the report of Mr. Watkins. We cannot conclude that the Commissioner did not treat the subject fairly and carefully, when he knew the topography, the physical features, the material to be excavated, and thus had not only a general, but also a rather minute knowledge of the situation and its problem.

·The complainants challenge the estimate of cost made by Mr. Watkins as excessive. A long controversy on this subject is presented in the record. Of course, all these are mere estimates, but engineers are supposed to have the technical training enabling them to make calculations in advance approximating the cost. These of course involve a great many matters for consideration. There is considerable evidence that Mr. Pardue's estimate was inadequate as to length and size of bridges and bridge approaches, and amount of borrowed material to make fills. On the other hand, Mr. Pardue thought that to some extent his estimate of price could finally be lowered. However, we must take the figures given—Pardue's estimate at $965,494.75, and Watkin's estimate at $1,676,963.85, a difference of $711,469.10. The cost estimated by Mr. Pardue is $463,058.84 more than the estimated cost of Highway No. 112, which is not disputed.

One of the grounds of challenge of the Watkins estimate is that he alone made the classifications of materials rock and dirt excavations, and embankments, the specifications of small drainage, and requirements for the bridges over 20 foot spans; that all this material was by him turned into the Plans Department and with this data as a basis the calculations of cost were made. These calculations were made, as the evidence shows, by Mr. Watkins, with the help of Messrs. Young and Stringfellow, assistant engineers. It is impossible in this opinion to go into details of evidence adduced by the opposing parties on this subject of costs; nor do we think that it would be necessary. Mr. Pardue's estimate itself justifies the conclusion that the cost of a new highway from the Hyde's Ferry Bridge to Clarksville via Ashland City, would be little short of one million dollars. We may assume the correctness of his estimate, although there is great reason

to believe that the cost would be far more than one million dollars; and yet the cost of such a route would be at least twice the cost of the proposed Highway No. 112 without it being paved. These figures do not contemplate paving either road.

It is insisted that this new road should anyhow be built at such cost, because it would afford to the people south of the Cumberland River coming over Highway No. 49 and the bridge at Ashland City, a much more convenient route to Nashville. Cheatham County has this new Highway No. 49 running clear through it from south to north, connecting Charlotte, the County Seat of Dickson County with Ashland City and Springfield over a bridge that has cost an enormous sum of money. We do not think that the Commissioner abused his discretion if he decided that the saving of about 10 or 12 miles between Ashland City and Nashville would not justify an additional expenditure of over half a million dollars, taken at the lowest estimate. It will be remembered that the estimate of the difference in cost between the two roads in question as made by Mr. Watkins, is $1,174,127.94.

As nearly as can be understood from the evidence the distance from Ashland City to the proposed intersection of Highway 112, with Highway 49 at Pleasant View is 9.3 miles; the distance from this intersection to Nashville is 21.5 miles; making a total distance from Ashland City to Nashville via Pleasant View about 31 miles, as against about 20 miles from Ashland City to Nashville by the Pardue route. And by the Pardue route the distance from Nashville to the Clarksville city limits would be 44.17 miles; the distance from Ashland City to Clarksville city limits by Pleasant View would be 29.8 miles. The distance from the Hyde's Ferry Bridge to Clarksville by the Pardue survey is about 42 miles; the distance from the Hyde's Ferry Bridge to Clarksville by the survey of No. 112 is a little over 41 miles.

We have thus endeavored to give a fair summary of the evidence as preliminary to a statement of our conclusion. The Chancellor upon this voluminous record made the following finding of facts:

"After a careful consideration of all the testimony as to the lay of the land traversed by both Highway No. 12 and the proposed Highway No. 112, and the estimated cost of construction of Route No. 112 by way of Pleasant View, which is $502,435.91, and the estimate of complainant's engineers of $965,494.75 for Route No. 12, and defendant's engineers of $1,676,963.85 for Route No. 12 by way of Ashland City, the comparative benefits to the public of the proposed routes, and of all the other facts and circumstances disclosed by this record, the Court is unable to conclude that the defendant Commissioner has failed to give fair or adequate consideration to the rights of complainants or that he

has in any way failed in the reasonable exercise of the discretion vested in him.

"The burden is on the complainants and the Court is constrained to the conclusion that the defendant Commissioner has not improperly exercised the discretion vested in him in determining, after a full consideration and a fair weighing of all the available information and data as to feasibility of route, costs, etc., that it is not advisable to construct the proposed highway over the route insisted upon by the complainants."

We concur fully with the Chancellor in these findings. We find that the Commissioner has not acted arbitrarily or capriciously, or abused his discretion, but has dealt fairly, thoroughly and prudently with a very difficult problem, giving full consideration to the rights of Cheatham County and its inhabitants; and that he could reasonably conclude that it was inadvisable for him to expend such an enormous additional sum of money for the construction of a new highway from Nashville to Clarksville via Ashland City. Furthermore, we find that his plan for the improvement and maintenance of the existing Highway No. 12 will give to Cheatham County a much better service than it is not getting from that highway, so that Highway No. 12 will not be abandoned. It is estimated, with hardly any dispute, that the construction and maintenance of Highway No. 112 would take seventy-five per cent of the traffic off of Highway No. 12. Highway No. 112 would serve the northern part of Cheatham County, in fact nearly half of the County, just as well as would be a new highway via Ashland City.

The insistence that the Commissioner violated the injunction in this cause by beginning the construction of Highway No. 112 in Davidson County has no proper relation to the real issues in this cause. The Commissioner has never been cited for contempt for violation of the injunction. The only contention based upon such alleged violation is that his conduct does not entitle him to consideration from the Court; that he is not in court with clean hands. The vast interests of the public, including the rights and interests of unborn generations, cannot be determined upon the basis of such a contention. The proper time to make such a point, if at all, was when the Commissioner tendered his answer to the amended and supplemental bill for filing. The failure to make any objection at that time operated as a waiver. The work of construction was not begun by the Commissioner until after the Chancellor sustained the demurrer to the bill in this cause, and in his decree thereon he specifically provided as follows:

"The Court is of the opinion that the injunction as granted under the original bill does not prohibit the defendant R. H.

Baker, Commissioner from constructing State Highway No. 112, and from using funds of the State Highway Department in the construction thereof.''

It is true that the appeal from this decree kept the injunction in force, as stated by the Supreme Court; but the Commissioner evidently did not understand this. We are not saying that he is not charged with knowledge of the law, but we are simply passing upon the question of his good faith. We are not adjudging whether or not he was in contempt, but we do hold that this matter has no material quality in determining the issues in this cause. It is but a barren technicality.

It results that all the assignments of error are overruled and the decree of the Chancery Court is affirmed. The costs of the appeal will be adjudged against the appellants and the sureties on their appeal bond. If desired, the cause will be remanded to the Chancery Court of Davidson County for the determination and award of damages, if any, growing out of the extraordinary process in this cause.

Faw, P. J., and Crownover, J., concur.